THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHELLE MCGEE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NORDSTROM INC.,<br><br>Defendant. | No. 2:23-cv-01875<br><br>**NORDSTROM, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>**NOTED FOR CONSIDERATION:**<br>**July 26, 2024** |

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - i
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................................ 1

II.  BACKGROUND ................................................................................................................. 2

   A.   The Nordstrom Rewards Program and Its Terms. ....................................................... 2

   B.   Plaintiff Enrolled in the Nordstrom Rewards Program and Agreed to the Terms. ...... 2

   C.   The Terms Contain an Agreement to Arbitrate. ........................................................... 4

      1.   The 2018 Terms .................................................................................................... 4

      2.   Nordstrom Updates Its Terms ............................................................................... 5

      3.   The 2023 Terms .................................................................................................... 5

   D.   Plaintiff's Lawsuit Against Nordstrom. ........................................................................ 6

III. ARGUMENT ....................................................................................................................... 7

   A.   The Federal Arbitration Act Requires Plaintiff to Arbitrate Her Claim. ..................... 7

   B.   The Court Should Compel Arbitration. ........................................................................ 8

      1.   There is a valid agreement to arbitrate. ................................................................ 8

      2.   Plaintiff's dispute is within the scope of the Arbitration Agreement. ................ 11

         *i.*   *The parties delegated arbitrability issues to the Arbitrator.* .................................. 11

         *ii.*  *The Arbitration Agreement's definition of "Disputes" encompasses this lawsuit.* .. 13

IV.  CONCLUSION .................................................................................................................. 15

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - ii
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ........................................................................................................... 7

*Blanton v. Domino's Pizza Franchising LLC*,
    962 F.3d 842 (6th Cir. 2020) ............................................................................................ 12

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ................................................................................ 8, 11, 12

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985) ........................................................................................................ 7, 8

*Dougan v. Children's Place, Inc.*,
    No. C20-0818JLR, 2020 WL 6286812 (W.D. Wash. Oct. 27, 2020) .............................. 9, 10

*Ekin v. Amazon Servs., LLC*,
    84 F. Supp. 3d 1172 (W.D. Wash. 2014) ........................................................................... 5

*Ekin v. Amazon Servs., LLC*,
    No. C14-0244-JCC, 2015 WL 11233144 (W.D. Wash. Feb. 10, 2015) ............................. 5

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ........................................................................................................... 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) ........................................................................................................... 11

*J.A. through Allen v. Microsoft Corp.*,
    No. C20-0640-RSM-MAT, 2021 WL 1723454 (W.D. Wash. Apr. 2, 2021) .................... 12

*Lamps Plus, Inc. v. Varela*,
    587 U.S. 176 (2019) ........................................................................................................... 7

*Momot v. Mastro*,
    652 F.3d 982 (9th Cir. 2011) ............................................................................................ 13

*Morris v. Conifer Health Sols. LLC*,
    No. 20-cv-5181-RJB, 2020 WL 1631203 (W.D. Wash. Apr. 2, 2020) ......................... 8, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ......................................................................................................... 7, 14

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - iii
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

*Naveja v. Primerica, Inc.*,
    No. 2:20-cv-01298-MCE-KJN, 2021 WL 1961761 (E.D. Cal. May 17, 2021) ......................13

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ...............................................................................................8

*Sales Creators, Inc. v. Little Loan Shoppe, LLC*,
    150 Wn. App. 527 (2009) ......................................................................................................8

*Schmidt v. Samsung Electronics Am. Inc.*,
    No. C16-1725-JCC, 2017 WL 2289035 (W.D. Wash. May 25, 2017) ..............................9, 12

*Schnall v. AT&T Wireless Servs., Inc.*,
    171 Wn.2d 260 (2011) ...........................................................................................................8

*Signavong v. Volt Mgmt. Corp.*,
    No. C07-515JLR, 2007 WL 1813845 (W.D. Wash. June 21, 2007) ......................................9

*Smith v. Spizzirri*,
    144 S. Ct. 1173 (2024) ...........................................................................................................7

*Sugaberry v. United Parcel Serv.*,
    No. 2:21-cv-00610-DGE, 2022 WL 910945 (W.D. Wash. Mar. 29, 2022) ............................9

*Weimin Chen v. Sierra Trading Post, Inc.*,
    No. 2:18-cv-1581-RAJ, 2019 WL 3564659 (W.D. Wash. Aug. 6, 2019) .............................12

*In re Wyze Data Incident Litig.*,
    No. C20-0282-JCC, 2020 WL 6202724 (W.D. Wash. Oct. 22, 2020) ..................................12

**Statutes**

9 U.S.C. § 2 ......................................................................................................................................7

9 U.S.C. § 3 ...................................................................................................................................7, 8

9 U.S.C. § 4 ......................................................................................................................................8

Arbitration Act ...............................................................................................................................14

Federal Arbitration Act ................................................................................................................7, 8

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - iv
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

## I. INTRODUCTION

Plaintiff Michelle McGee ("Plaintiff") enrolled in Nordstrom, Inc.'s ("Nordstrom") Rewards Program—and thereby agreed to arbitrate "disputes arising out of or relating to any aspect of the relationship between you and Nordstrom"—but improperly filed the present lawsuit in federal court. Nordstrom accordingly moves to compel Plaintiff to individually arbitrate the claim raised in her December 6, 2023 Complaint. Dkt. No. 1.

Founded in Seattle in 1901, Nordstrom is a fashion retailer that sells apparel, shoes, and accessories online and in brick-and-mortar stores. Plaintiff alleges that after she enrolled in Nordstrom's Rewards Program ("Rewards Program"), the emails Nordstrom sent Plaintiff in connection with the Rewards Program contained embedded "tracking pixels" that collected data, including when/if the email was opened and for how long it was viewed. Despite agreeing to Nordstrom's Privacy Policy—which expressly disclosed Nordstrom's email data-collection processes—Plaintiff alleges she did not consent to this data collection and that it violates Arizona's Telephone Utility and Communication Service Records Act, A.R.S. § 44-1376.01. Plaintiff's claim is baseless, but regardless of its merits, it cannot proceed in this forum and must be pursued, if at all, in individual arbitration before the American Arbitration Association ("AAA") for the following reasons.

First, when Plaintiff made an in-store purchase at a Reno, Nevada Nordstrom Rack store on May 29, 2018, she chose to enroll in Nordstrom's Rewards Program. During the enrollment process, Plaintiff was given notice of, and affirmatively consented to, Nordstrom's Rewards Terms and Conditions ("Terms"), as well as updates to the Terms.

Second, the Terms contain a binding arbitration provision that requires arbitration of any dispute, controversy, or claim between Plaintiff and Nordstrom on an individual basis (the "Arbitration Agreement").

Third, the Arbitration Agreement contains a delegation clause, which mandates that the arbitrator, not the Court, decides questions of arbitrability.

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - 1
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

## II. BACKGROUND

### A. The Nordstrom Rewards Program and Its Terms.

The Rewards Program is Nordstrom's popular customer-loyalty program that rewards customers for enrolling and purchasing goods from Nordstrom.[1] Declaration of Alissa Hale in Support of Motion to Compel Arbitration ("Hale Decl.") ¶ 3. Customers can learn about the Rewards Program from signs posted around stores, from store associates, and on Nordstrom's website, among other channels. *Id.* ¶¶ 4, 6-7. No purchase is necessary to join, and joining is completely voluntary. *Id.* ¶ 3. Membership and participation in the Rewards Program is subject to the Terms. *Id.*, Ex. C, 2018 Terms at 1

### B. Plaintiff Enrolled in the Nordstrom Rewards Program and Agreed to the Terms.

On May 29, 2018, Plaintiff made an in-store purchase at a Reno, Nevada Nordstrom Rack store and chose to enroll in the Rewards Program. *Id.* ¶ 2, Ex. A. Pursuant to Nordstrom's standard operating procedure in 2018, when customers made in-store purchases, they were asked whether they were enrolled in the Nordstrom Rewards Program and, if they were not, they were provided with a brochure summarizing the Rewards Program and asked if they would like to enroll. This brochure explained that "for complete program details," customers could go to the URL nordstrom.com/rewardsterms, which contained a copy of the Terms. *Id.* ¶ 6, Ex. E. Nordstrom's sales associates kept copies of the Terms at the point of sale for potential members to review during enrollment. *Id.* ¶ 7.

The Rewards Program was also advertised throughout stores on signs near the entrance and check-out counters. *Id.* ¶ 4. These signs advertised the Rewards Program and stated: "For details, just ask a salesperson or go to nordstrom.com/rewards. Restrictions apply." *Id.*, Ex. B. The referenced webpage also hyperlinked to a copy of the Terms. *Id.*

---

[1] Nordstrom's Rewards Program was rebranded in 2018 as "The Nordy Club." Hale Decl. ¶ 3. Because the 2018 Terms refer to the program as "The Nordstrom Rewards Program," this Motion uses the phrase the "Rewards Program" throughout for consistency and to avoid confusion.

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - 2
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

1  To enroll in the Rewards Program, Plaintiff was asked for, and provided her phone number
2  and email address, which the sales associate contemporaneously entered into Nordstrom's point-
3  of-sale computer system. *Id.* ¶ 7.  After Plaintiff's contact information was entered, Plaintiff was
4  shown a message on the point-of-sale screen, which asked her to confirm her enrollment. *Id.*
5  Specifically, the screen—an example of which appears below—stated that by selecting "Yes," she
6  agreed to the Terms.



*Id.*, Ex. F.

As Nordstrom's business records indicate, after Plaintiff was presented with this message, and was provided the opportunity to view the Terms, she selected "YES" on the point-of-sale screen. Declaration of Tom Savage ("Savage Decl.") ¶¶ 3-4, Ex. A.

After enrolling in the Rewards Program and accepting the Terms, Plaintiff received an email confirming her enrollment and monthly statements of her rewards account points accrual, which included hyperlinks to the Terms as well as to Nordstrom's Privacy Policy.  Hale Decl. ¶ 8.

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - 3
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

1  Plaintiff remains a Rewards Program member today and continues to have access to the
2  accompanying benefits. *Id.* ¶ 8.

### C. The Terms Contain an Agreement to Arbitrate.

#### 1. The 2018 Terms

The applicable terms at the time of Plaintiff's May 29, 2018 enrollment (the "2018 Terms") notify customers—in the introduction—about the arbitration provision:

> THESE NORDSTROM REWARDS TERMS AND CONDITIONS ("Rewards Terms and Conditions") INCLUDE A CLASS ACTION WAIVER AND REQUIRE BINDING ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. DETAILS ARE SET FORTH BELOW.

Hale Decl. Ex. C, 2018 Terms at 1.

The 2018 Terms include a section titled "Arbitration" which provides in relevant part:

> **Unless you send us the rejection notice described in this document, this provision will apply to you and, as a result, either one of us can elect to subject any Rewards Dispute between us to individual arbitration.**
>
> \*    \*    \*
>
> As used in this arbitration provision, a "Rewards Dispute" means any claim or controversy between us that in any way arises from or relates to the Program, including, but not limited to, these Member Terms and Conditions, the issuance or redemption of Nordstrom Notes, Nordstrom Rewards points, other services and events access. Rewards Dispute has the broadest possible meaning, and includes, without limitation, disputes based upon contract, tort, consumer rights, fraud and other intentional torts, agency, statute or constitution, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief).

*Id.* at 10 (emphasis original).

The 2018 Terms also gave Plaintiff an opportunity to opt out of the arbitration provision: "If you do not want this arbitration provision to apply, you must reject it in writing by mailing us a written rejection notice containing your name legibly printed, the mobile phone number and email address you provided when you enrolled in the Program, a statement that you reject the

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - 4
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

arbitration provision, and your signature." *Id.* Plaintiff did not choose to opt out of the arbitration agreement; rather, she agreed to be bound by these provisions. Hale Decl. ¶ 8.

### 2. Nordstrom Updates Its Terms

The 2018 Terms provide that Nordstrom "reserve[s] the right to change these Member Terms and Conditions or the Program at any time and in any way" and that "[y]our continued participation in the Program after we make changes to it or these Member Terms and Conditions signifies your acceptances of such changes." Hale Decl. Ex. C, 2018 Terms at 8. Consistent with the 2018 Terms, Nordstrom periodically updates its Terms, typically on an annual basis, and emails its customers with notices of such updates. *Id.* ¶ 9. As a Rewards Program member, Plaintiff receives an email each time the Terms are updated. *Id.*

### 3. The 2023 Terms

The Terms in effect when Plaintiff filed her December 6, 2023 Complaint ("2023 Terms")[2] are substantially similar to the 2018 Terms—both contain mandatory arbitration agreements—however, the 2023 Terms also include a mandatory dispute-resolution provision. Specifically, the 2023 Terms provide:

> If you intend to initiate an arbitration proceeding, you must first send a verified Notice to Nordstrom that describes the Dispute. The Notice must include your name and contact information (address, telephone number, and email address), sufficient information to enable Nordstrom to identify any transaction at issue; and a detailed description of (1) the Dispute, (2) the nature and basis of your claims, and (3) the nature and basis of the relief sought, with a detailed calculation. The Notice shall be sent by email to: corporatesecretary@nordstrom.com or by mail to: Nordstrom, Inc., Attn: General Counsel and Corporate Secretary, 1617 6th Avenue, Seattle, WA 98101.

\*   \*   \*

---

[2] The 2023 Terms govern this dispute. "Washington and Ninth Circuit courts have a history of enforcing contracts containing change-in-terms provisions." *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1175 (W.D. Wash. 2014) (collecting cases); *id.* (compelling arbitration where "Amazon expressly reserves the right to change, without notice, consent, or a refund, its Prime T & Cs and general COU"); *see also Ekin v. Amazon Servs., LLC*, No. C14-0244-JCC, 2015 WL 11233144, at *3-4 (W.D. Wash. Feb. 10, 2015) (citing additional cases).

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - 5
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

> If the Dispute is not resolved within sixty (60) days after receipt of the Notice (which period can be extended by agreement of the parties), you or Nordstrom may commence a formal dispute resolution proceeding consistent with the process set forth below. Compliance with and completing this informal dispute resolution process is a condition precedent to filing any formal dispute resolution proceeding, including a demand for arbitration.

Hale Decl. Ex. G, 2023 Terms at 11.

> The 2023 Terms contain a binding Arbitration Agreement:

> If we are unable to resolve the Dispute through the mandatory informal dispute resolution process, you unconditionally agree that, except as set forth below, all claims, controversies, or disputes between you and Nordstrom will be resolved entirely through binding individual arbitration, rather than in court, including, without limitation, **such claims, controversies, or disputes arising out of or relating to any aspect of the relationship between you and Nordstrom, your access or Use of our Site or any products or services offered by or purchased from Nordstrom** through our Site or stores, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory (**"Dispute"**).

> Dispute will be given the broadest possible meaning permitted by law.

*Id.* (emphasis added).

**D. Plaintiff's Lawsuit Against Nordstrom.**

Plaintiff improperly filed this putative class action on December 6, 2024. Dkt. No. 1, Complaint. Plaintiff acknowledges she is a "subscriber[] to Defendant's email list," but alleges that Nordstrom never received Plaintiff's consent to "embed[] trackers within its emails" that "record whether and when subscribers open and read their messages."[3] *Id.* at ¶¶ 3-5, 43. Specifically, Plaintiff contends that Nordstrom's marketing emails contain "tracking pixels" that collect "engagement data," such as the average time it takes to read an email, how many times it was opened, whether the email was printed or forwarded, and how long the recipient had the email

---

[3] Although not the subject of this motion, Nordstrom disputes these allegations, including Plaintiff's contention that she did not consent to, or have notice of, Nordstrom's collection of certain data. Indeed, Nordstrom's Privacy Policy in effect when Plaintiff enrolled, and which Plaintiff was shown multiple times, notified Plaintiff that Nordstrom employs "web beacons or tags (small images embedded into websites or emails that send information about your computer, tablet, phone, or other device when you visit our website, use or mobile application, or open an email we send to you)." Hale Decl. Ex. D, 2018 Privacy Policy at 2.

open. *Id.* at ¶¶ 32-42. On the basis of these allegations, Plaintiff brings a single claim against Nordstrom for violation of Arizona's Telephone Utility and Communication Service Records Act, A.R.S. § 44-1376.01, *id.* at ¶¶ 51-61, and seeks to certify a class consisting of "[a]ll persons in the State of Arizona who have opened a marketing email containing a tracking pixel from Defendant." *Id.* at ¶ 44. This case is part of the latest wave of litigation brought by Plaintiff's counsel against retailers in courts across the country seeking to challenge expected, common, and disclosed email technology under an inapplicable (and likely preempted) Arizona statute.

### III.  ARGUMENT

**A. The Federal Arbitration Act Requires Plaintiff to Arbitrate Her Claim.**

Under the Federal Arbitration Act ("FAA"), written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344 (2011); *see also Lamps Plus, Inc. v. Varela,* 587 U.S. 176, 185 (2019) ("[B]enefits of private dispute resolution [include] lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes") (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 685 (2010)). If a court compels arbitration in a dispute filed in federal court, the FAA requires that the Court stay the litigation pending arbitration. 9 U.S.C. § 3; *Smith v. Spizzirri*, 144 S. Ct. 1173, 1175 (2024).

The FAA is mandatory and does not allow courts to delve into policy considerations regarding arbitration. It "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (emphasis in original); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (holding "questions of arbitrability must be addressed with a healthy

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - 7
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

1 regard for the federal policy favoring arbitration," and "any doubts concerning the scope of
2 arbitrable issues should be resolved in favor of arbitration").

3   In deciding a motion to compel arbitration, the court must limit its review to two issues:
4 "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement
5 covers the dispute." *Brennan v. Opus Bank,* 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam*
6 *v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002)).

7   When both elements exist, the FAA "leaves no place for the exercise of discretion by a
8 district court, but instead mandates that district courts shall direct the parties to proceed to
9 arbitration" on the issues they have agreed to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd*, 470
10 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

11   Regarding the second element, where, as here, the parties have delegated threshold
12 arbitrability questions to the arbitrator, the Court must honor that agreement and allow the
13 arbitrator (not the Court) to decide arbitrability, including the enforceability and scope of the
14 arbitration agreement. *Brennan*, 796 F.3d at 1130.

15 **B. The Court Should Compel Arbitration.**

16   **1. There is a valid agreement to arbitrate.**

17   Courts apply ordinary contract formation principles under applicable state law to determine
18 whether parties agreed to arbitrate. *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995);
19 *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175 (9th Cir. 2014). Here, both the 2018 and
20 2023 Terms contain a Washington choice-of-law provision. Hale Decl. Ex. G, 2023 Terms at 10
21 ("These Program Rules are governed by the laws of the State of Washington, without regard to
22 any conflict of law provisions."); *see also id.* Ex. C, 2018 Terms at 2.  Washington courts enforce
23 choice-of-law provisions. *See Schnall v. AT&T Wireless Servs., Inc.,* 171 Wn.2d 260, 266 (2011).

24   Under Washington law, "[i]n interpreting an arbitration clause, the intentions of the parties
25 as expressed in the contract control."  *Sales Creators, Inc. v. Little Loan Shoppe, LLC*, 150 Wn.
26 App. 527, 531 (2009); *see also Morris v. Conifer Health Sols. LLC*, No. 20-cv-5181-RJB, 2020

WL 1631203, at *4 (W.D. Wash. Apr. 2, 2020) ("Washington follows the objective manifestation theory of contracts.") (citing *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503 (2005)).

In the consumer context, courts routinely enforce arbitration agreements when entered at the point-of-sale and the consumer is given an opportunity to read the terms of the agreement. Specifically, "Washington does not allow parties to shirk contract obligations if they had actual or constructive notice of the provisions." *Dougan v. Children's Place, Inc.*, No. C20-0818JLR, 2020 WL 6286812, at *4 (W.D. Wash. Oct. 27, 2020) (finding consumer had constructive notice of terms during point-of-sale transaction where in-store signs and brochure stated terms governed transaction); *see also Schmidt v. Samsung Electronics Am. Inc.*, No. C16-1725-JCC, 2017 WL 2289035, at *2-3 (W.D. Wash. May 25, 2017) (holding plaintiffs assented to arbitration where a product's box warned of "additional Samsung terms and conditions," the box contained a brochure warning the reader that "by using this device, you accept those [contained] terms and conditions"); *Sugaberry v. United Parcel Serv.*, No. 2:21-cv-00610-DGE, 2022 WL 910945, at *1 (W.D. Wash. Mar. 29, 2022) (finding plaintiff assented to arbitration agreement by signing packaging slips for UPS shipments, where such packaging slips "referred to the UPS Tariff/Terms which contain a mandatory arbitration clause" despite such terms not being attached to the packaging slips); *cf. Signavong v. Volt Mgmt. Corp.*, No. C07-515JLR, 2007 WL 1813845, at *3 (W.D. Wash. June 21, 2007) (finding a party "cannot successfully argue that the contract is unenforceable as long as she was not deprived of the opportunity to read it.").

The *Dougan* decision is illustrative. There, the plaintiff enrolled in the rewards program of the defendant retailer, The Children's Place ("TCP"), at the point of sale, resulting in the plaintiff receiving communications about the program via email. 2020 WL 6286812, at *1. The plaintiff later sued, claiming such emails were deceptive. *Id.* at *3. At its stores, including the store where the plaintiff enrolled, TCP posted signs advertising the program, which referenced a URL containing the program terms and conditions. *Id.* at *1. At the time the plaintiff signed up for the

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - 9
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

program, TCP had a standard operating procedure for enrolling customers in the program, which included asking customers at the point of sale if they wanted to become program members. *Id.* at *2. If customers wanted to enroll, the sales associates would offer those customers a brochure with the terms and conditions. *Id.* Copies of the terms and conditions were also available at each cash register. *Id.*

The *Dougan* Court held that the plaintiff had agreed to arbitrate her claims, because she had "constructive knowledge" of the terms and conditions based on the "adequate" disclosures made to her. 2020 WL 6286812 at *4-5. The plaintiff's assertion that she "never received a copy of" the brochure, which contained the terms and conditions, was not sufficient to overcome arbitration because "TCP's evidence of a consistent practice of delivering the terms and conditions is prima facie evidence that she was aware of the offer." *Id.* at *5.

Here, Plaintiff was repeatedly put on notice of and had ample opportunity to review the Terms at the time she signed up to be a Rewards Program member—and at any point between 2018 and the present when she chose to remain a Rewards Program member.

<u>Notice at Point-of-Sale</u>: Nordstrom's sales associates kept copies of the Terms at the register, and would have provided a copy of the 2018 Terms to Plaintiff if she wished to review them, consistent with the disclosure language presented to Plaintiff on the check-out screen. Hale Decl. ¶ 7. The check-out screen also prompted Plaintiff to ask the sales associate for a copy of the Terms if she wanted to review them. *Id.* That screen informed Plaintiff that by selecting "YES" on the screen, she was agreeing to the 2018 Terms. *Id.*, Ex. F. Plaintiff proceeded to select "YES" on the screen, confirming her enrollment and agreeing to the 2018 Terms. Savage Decl. ¶¶ 3-4, Ex. A. Plaintiff then had *sixty days* to review the 2018 Terms and opt out of the arbitration provisions. Hale Decl. Ex. C, 2018 Terms at 10.[4] Plaintiff chose not to do so.

---

[4] Plaintiff has never issued an opt-out notice and is still a member of Nordstrom's rewards program to this day. Hale Decl. ¶ 8.

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - 10
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

<u>Rewards Program Brochure Directed Customer to Terms</u>: Prospective Rewards Members received a brochure that also contained the website address for Plaintiff to review the Terms on Nordstrom's website. Hale Decl. ¶ 6, Ex. E.  It was Nordstrom's standard operating procedure for sales associates, at the point of sale, to ask customers whether they were enrolled in the Nordstrom Rewards Program. *Id.* If a customer was not enrolled, and expressed interest, the retail sales associate would then provide the customer with a brochure summarizing the Rewards Program and directing customers to go to a URL corresponding to the 2018 Terms "for complete program details." *Id.*

<u>In-Store Signage Directed Customer to Terms</u>: At the time of the Transaction, the Rewards Program was advertised in the store through signs near the entrance and check-out counters, which further advised that "[f]or details, just ask a salesperson or go to nordstrom.com/rewards." *Id.* ¶ 4, Ex. B. The referenced webpage contained a hyperlink to the 2018 Terms. *Id.*

Plaintiff was put on constructive notice of the Terms through each of these three independent notices.

**2. Plaintiff's dispute is within the scope of the Arbitration Agreement.**

The second question for the Court is whether the Arbitration Agreement encompasses this dispute. The answer is yes, but the Court need not reach the question because the parties delegated arbitrability questions to the arbitrator.  Accordingly, if there is a valid agreement to arbitrate, as there is here, the Court must compel arbitration and leave further questions of arbitrability to the arbitrator.

*i.    **The parties delegated arbitrability issues to the Arbitrator.***

"[I]f a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). The parties are free to delegate any "gateway issues" over the validity and enforceability of arbitration provisions. *Brennan*, 796 F.3d at 1130 . Here,

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - 11
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

Plaintiff and Nordstrom delegated arbitrability to the arbitrator through two independent clauses in the Arbitration Agreement.

*First*, both the 2018 and 2023 Terms incorporate the AAA's rules, "including the AAA's Supplementary Procedures for Consumer-Related Disputes." Hale Decl. Ex. C, 2018 Terms at 10; *id.* Ex. G, 2023 Terms at 12 ("The AAA consumer rules for arbitration will apply as modified by this Dispute Resolution section."). AAA's consumer rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Consumer Arbitration Rule 14(a) (available at www.adr.org). Incorporation of the AAA rules delegates to the arbitrator the responsibility to decide arbitrability issues. *See, e.g.*, *J.A. through Allen v. Microsoft Corp.,* No. C20-0640-RSM-MAT, 2021 WL 1723454, *7-8 (W.D. Wash. Apr. 2, 2021) (holding issue of arbitrability was delegated to arbitrator in contract incorporating AAA rules), *report and recommendation adopted,* 2021 WL 1720961 (W.D. Wash. Apr. 30, 2021); *Weimin Chen v. Sierra Trading Post, Inc.,* No. 2:18-cv-1581-RAJ, 2019 WL 3564659, *5-6 (W.D. Wash. Aug. 6, 2019) (same); *Schmidt*, 2017 WL 2289035, *6 (same); *In re Wyze Data Incident Litig.,* No. C20-0282-JCC, 2020 WL 6202724, *3 (W.D. Wash. Oct. 22, 2020) (holding issue of arbitrability was delegated to arbitrator in contract incorporating Consumer Arbitration Rules).

"[V]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130 (internal quotations omitted); *see also Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845-46 (6th Cir. 2020) (joining eleven other federal circuit courts in agreeing that "incorporation of the AAA Rules . . . provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability'"). For this reason alone, in line with the parties' agreement, this dispute belongs before an arbitrator.

*Second*, aside from incorporating the AAA rules, the Arbitration Agreement expressly delegates arbitrability to the arbitrator. The 2023 Terms provide that "the arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any Dispute relating to the interpretation, applicability, enforceability, or formation of this Dispute Resolution section including, but not limited to, a claim that all or any part of it is void or voidable." Hale Decl. Ex. G, 2023 Terms at 12. The 2018 Terms similarly state that any dispute must be resolved by "individual arbitration," and that any "Rewards Dispute" determined by the arbitrator "includes disputes about the validity, enforceability or scope of this arbitration provision." Hale Decl. Ex. C, 2018 Terms at 10. Courts have held similarly broad language demonstrates "clear and unmistakable evidence" of an agreement to arbitrate arbitrability. *See*, *e.g.*, *Naveja v. Primerica, Inc.*, No. 2:20-cv-01298-MCE-KJN, 2021 WL 1961761, at *5-6 (E.D. Cal. May 17, 2021) (concluding parties clearly and unmistakably delegated arbitrability where arbitration clause included "any type of dispute in any way related to your relationship with a Primerica Company that under law may be submitted by agreement to binding arbitration" and parties agreed to conduct arbitration in accordance with AAA Rules); *see also Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011).

### ii. *The Arbitration Agreement's definition of "Disputes" encompasses this lawsuit.*

This dispute also falls within the scope of the Arbitration Agreement under its express terms. Under the 2023 Terms, Plaintiff agreed to arbitrate all "Disputes," defined as "**all claims, controversies, or disputes between [Plaintiff] and Nordstrom** . . . including, without limitation, such claims, controversies, or disputes arising out of or relating to any aspect of the relationship between you and Nordstrom ….." Hale Decl. Ex. G at 11 (emphasis added).  The Arbitration Agreement further provides that the term Dispute "will be given the broadest possible meaning permitted by law." *Id.* at 11-12.

The 2018 Terms similarly define "Rewards Dispute" as "any claim or controversy between us that in any way arises from or relates to the Program, including, but not limited to, these Member

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - 13
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

Terms and Conditions, the issuance or redemption of Nordstrom Notes, Nordstrom Rewards points, other services and events access. Rewards Dispute has the broadest possible meaning, ….." Hale Ex. 1, 2018 Terms at 10.

Although the terms of the Arbitration Agreement are clear, any ambiguity in the scope of a contract must be construed in favor of arbitration. *See, e.g.*, *Mercury Constr. Corp.*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Morris*, 2020 WL 1631203, at *3 (same).

Here, Plaintiff's claims fall squarely in the Terms' arbitration provisions. Plaintiff is a "subscriber[] to Defendant's email list," Compl. ¶ 3, and alleges that Nordstrom's marketing emails contain "tracking pixels" that contain various "engagement data," such as the average time it takes to read an email, how many times it was opened, whether the email was printed or forwarded, and how long the recipient had the email open. *Id.* at ¶¶ 32-42. On the basis of these allegations, Plaintiff alleges Nordstrom violated Arizona's Telephone Utility and Communication Service Records Act, A.R.S. § 44-1376.01. *Id.* at ¶¶ 51-61.  Plaintiff signed up to receive Nordstrom marketing emails when she enrolled in the Rewards Program, and her claims "aris[e] out of or relat[e] to . . . the relationship between [Plaintiff] and Nordstrom." Hale Decl. Ex. G, 2023 Terms at 11.[5]

Because Plaintiff's claim is subject to arbitration, and because Plaintiff has not opted-out of the arbitration provisions, the Court should compel arbitration and stay further proceedings consistent with the parties' contractual agreement.

---

[5] Because Plaintiff receives the alleged emails pursuant to her enrollment in the Nordstrom Program Rewards, her claims also specifically "arise[] from or relate[] to the Program." Hale Ex. C, 2018 Terms at 10.

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - 14
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

IV.     **CONCLUSION**

For the foregoing reasons, Nordstrom respectfully requests the Court enter an order compelling Plaintiff to engage in individual arbitration, and staying these proceedings pending the outcome of the arbitration.

Respectfully submitted, this 28th day of June, 2024.

           DLA PIPER LLP (US)

           *s/ Austin Rainwater*
           Austin Rainwater, WSBA No. 41904
           Jeffrey DeGroot, WSBA No. 46839
           Virginia Weeks, WSBA No. 55007
           701 Fifth Avenue, Suite 6900
           Seattle, Washington 98104-7029
           Tel:     206.839.4800
           E-mail: austin.rainwater@us.dlapiper.com
           jeffrey.degroot@us.dlapiper.com
           virginia.weeks@us.dlapiper.com

           AND

           Isabelle L. Ord, *pro hac vice*
           DLA PIPER LLP (US)
           555 Mission Street, Suite 2400
           San Francisco, CA 94105-2933
           E-mail: isabelle.ord@us.dlapiper.com

           *Attorneys for Defendant Nordstrom, Inc.*

           I certify that this memorandum contains 4,673 words in compliance with the Local Civil Rules

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the parties.

Dated this 28th day of June, 2024.

*s/ Jacey Bittle*
Jacey Bittle, Legal Administrative Assistant

NORDSTROM, INC.'S MOTION TO COMPEL
ARBITRATION - 16
Case No. 2:23-cv-01875

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800