UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Michelle McGee, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Nordstrom Inc.,<br><br>Defendant. | CASE NO. 2:23-cv-01875<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION |

# I

## INTRODUCTION

This matter comes before the Court on Defendant Nordstrom, Inc.'s Motion to Compel Arbitration. *See* Dkt. # 20; Dkt. # 25. The Court has considered: the materials submitted in support of, and in opposition to, the motion; the rest of the case file; and the governing law. Being fully advised, the Court GRANTS the motion and STAYS this action.

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 1

# II

## BACKGROUND

The factual background herein derives from the parties' briefing and exhibits related to the motion.[1]

On May 29, 2018, McGee bought several items at a Nordstrom Rack store in Reno, Nevada. Dkt. # 21 at 2 ¶ 2; Dkt. # 22 at 2 ¶ 2. While there, McGee enrolled in The Nordstrom's Rewards Program (Rewards Program).[2] Dkt. # 21 at 3 ¶ 8. The Rewards Program provides points for purchases and other benefits to Nordstrom shoppers. Dkt. # 21 at 2 ¶ 3; Dkt. # 21-5 at 2–3 (describing the Rewards Program). When shoppers enroll in the program, they must provide their name, telephone number, and email address. Dkt. # 21 at 3 ¶ 7; Dkt. # 21-3 at 2 (describing the requirements to enroll in the Rewards Program). McGee provided her name, telephone number, and email address when she enrolled. Dkt. # 22-1 (showing data maintained by Nordstrom that contains the information McGee provided when she enrolled in the Rewards Program, including her name, telephone number, and email address).

When McGee enrolled, shoppers were also provided with an enrollment confirmation screen, which asked them to confirm their name, email, and phone number. Dkt. # 27-1. The confirmation screen also informed shoppers that "[b]y selecting Yes, [they] agree to Rewards Member Terms & Conditions (ask a salesperson for Terms)." *Id*. The Rewards Member Terms & Conditions (Rewards Terms) state that "[w]hen you enroll in the [Rewards] Program and

---

[1] McGee requests that the Court, under Local Rule 7(g), strike paragraphs 2–9 of the Declaration of Alissa Hale, *see* Dkt. # 21, as inadmissible hearsay. *See* Dkt. # 23 at 4, 9. As discussed below, *see infra* Section III. A, the Court declines to strike Hale's declaration.

[2] The parties note that, several months after McGee signed up for the Rewards Program, Nordstrom rebranded the program as "The Nordy Club." *See* Dkt. ## 21 at 2 ¶ 3; 24 at 1 ¶¶ 2–3. Since the Rewards Member Terms and Conditions in place when McGee signed up for the program in 2018 refer to "The Nordstrom Rewards Program" (Dkt. #21-3), for clarity, this order uses the phrase "Rewards Program."

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 2

provide us your email and mobile phone number, you will also be enrolled to receive marketing emails and phone calls from us." Dkt. # 21-3 at 10.

When McGee enrolled in the Rewards Program in May 2018, her membership was subject to the Rewards Terms. Dkt. # 21 at 2 ¶ 5, Dkt # 21-3. McGee agreed to arbitrate any "Rewards Dispute" with Nordstrom:

> **Arbitration**
>
> **Please read this arbitration provision carefully. Unless you send us the rejection notice described in this document, this provision will apply to you and, as a result, either one of us can elect to subject any Rewards Dispute between us to individual arbitration. This means that: (1) a court or jury will not resolve the Rewards Dispute; (2) you will not be able to participate in a class action or similar proceeding to resolve the Rewards Dispute; and (3) your appeal rights during and after the arbitration will be limited. The Federal Arbitration Act and federal arbitration law apply to this agreement.**
>
> As used in this arbitration provision, a "Rewards Dispute" means any claim or controversy between us that in any way arises from or relates to the Program, including, but not limited to, these Member Terms and Conditions, the issuance or redemption of Nordstrom Notes, Nordstrom Rewards points, other services and events access. Rewards Dispute has the broadest possible meaning and includes, without limitation, disputes based upon contract, tort, consumer rights, fraud and other intentional torts, agency, statute or constitution, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). Rewards Dispute includes claims, counterclaims, cross-claims, and third-party claims, and it includes disputes in the past, present or future. It also includes disputes about the validity, enforceability or scope of this arbitration provision.

Dkt. # 21-3 at 11 (emphasis in original). The Rewards Terms also provide that the arbitration will be administered "by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes." *Id*.

Nordstrom periodically updates the Rewards Terms. Dkt. # 21 at 3 ¶ 9. Nordstrom notifies Rewards Program members via email when the Rewards Terms are updated. Dkt. # 21 at 3 ¶ 9. The 2023 Rewards Terms, in place when McGee filed her complaint on December 6, 2023, look much like the 2018 Rewards Terms, incorporating similar mandatory arbitration and

class action waiver provisions. *Id*. at 4 ¶ 10; Dkt. # 21-7 at 12–15. The 2023 Rewards Terms, like the 2018 Rewards Terms, also expressly delegate the issue of arbitrability to the arbitrator:

> Except as expressly provided in this Dispute Resolution section, the arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any Dispute relating to the interpretation, applicability, enforceability, or formation of this Dispute Resolution section including, but not limited to, a claim that all or any part of it is void or voidable.

Dkt. # 21-7 at 13.

McGee sued Nordstrom on behalf of herself and a putative class of similarly situated individuals. Dkt. # 1 at 1 ¶ 1. She alleges that Nordstrom violated Arizona's Telephone, Utility and Communication Service Records Act (the Act), *see* A.R.S. § 44-1376 *et seq.*, by embedding trackers in its emails, without users' consent, that record when emails are opened and read by recipients. *Id*. at 1–2 ¶¶ 1, 4–5. McGee alleges that Nordstrom violated the Act, which "prohibits procuring or attempting to procure the communication service records of email recipients without their authorization." *Id*. at 2 ¶ 5. After an unsuccessful mediation, Nordstrom now moves to compel arbitration. *See* Dkt. ## 18, 19, 20.

### III
#### Discussion

A.  Request to Strike Declaration of Alissa Hale

McGee requests that the Court, under LCR 7(g), strike Paragraphs 2–9 of the Declaration of Alissa Hale, *see* Dkt. # 21, because "they contain testimony based on inadmissible hearsay." Dkt. # 23 at 8. Hearsay is a "statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). McGee contends that (1) the enrollment confirmation screen attached as Exhibit F to Hale's declaration, *see* Dkt. # 21-6, is hearsay; (2) any testimony by Hale that the enrollment confirmation screen McGee saw "looked materially

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 4

the same" as Exhibit F, *see* Dkt. # 21-6, would be hearsay; and (3) Hale's declaration, *see* Dkt. # 21, "purports to be based in part on her 'discussions with other Nordstrom employees' thus constituting yet another level of hearsay." Dkt. # 23 at 7–8.

Nordstrom responds that the documents detailing McGee's purchases in May 2018 and the documents describing the Rewards Program and Rewards Terms are "Records of a Regularly Conducted Activity" under Federal Rule of Evidence 803(6); Nordstrom also says that the paragraphs describing Nordstrom's 2018 Rewards Terms and privacy policy are not hearsay because they are contract terms. Dkt. # 25 at 9–11. In Hale's supplemental declaration, *see* Dkt. # 26, she clarifies:

> My statements in paragraphs 2 through 10 of my prior declaration (*i.e.*, the June 28, 2024 Declaration of Alissa Hale) were made solely on the basis of my personal knowledge and my review of Nordstrom's records, which have been created and maintained in the ordinary course of Nordstrom's business. The only exception is with respect to my statement in paragraph 7 of my prior declaration that Exhibit F "reflects the enrollment process in place since at least 2018." That statement was based on my discussions with Nordstrom employees.

Dkt. # 26 at 1–2. Nordstrom also filed the Declaration of Ryan Luckenbaugh, *see* Dkt. # 27, which includes a template of the Rewards Program enrollment confirmation screen Nordstrom used when McGee enrolled in the program in May 2018. Dkt. # 27 at 1–2 ¶ 2, Dkt. # 27-1 (stating that the only change to the template after the renaming of the Rewards Program was a "minor update to change the phrase 'Rewards Member Terms & Conditions' to 'Nordy Club Member Terms and Conditions'").

McGee, outside of arguing that the enrollment confirmation screen attached as Exhibit F to Hale's declaration is hearsay, identifies no other specific statements she seeks to exclude as hearsay, nor does she explain why most of the Hale declaration should be stricken as hearsay. In her supplemental declaration, Hale clarifies that her declaration is based on her personal knowledge and review of Nordstrom's business records. Hale explains that only the statement

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 5

that Exhibit F "reflects the enrollment process in place since at least 2018" is based on her conversations with other Nordstrom employees. For the reasons provided by Nordstrom, Hale's declaration, and its exhibits, are not hearsay. Also, this order does not consider Hale's statement based on her conversations with other Nordstrom employees, nor the enrollment confirmation screen attached as Exhibit F to Hale's declaration in the analysis below. Thus, the Court declines to strike the Hale Declaration.

B.  Motion to Compel Arbitration

Under the Federal Arbitration Act (FAA), written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In passing the FAA, Congress "directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (quoting 9 U.S.C. § 2). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

When evaluating a motion to compel arbitration, courts generally limit their review to two issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). But even these "gateway" issues "can be expressly delegated to [an] arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Id.* (emphasis in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 6

whether their agreement covers a particular controversy."). If there is a valid delegation provision, then "a court must enforce an agreement that . . . clearly and unmistakably delegates arbitrability questions to the arbitrator." *Brennan*, 796 F.3d at 1132.

Before a court can address the "arbitrability" of a claim, it must determine whether the parties have agreed to "delegate" arbitrability questions to an arbitrator. A delegation clause "delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022). The Supreme Court has explained that "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent–A–Ctr.*, 561 U.S. at 70; *see also Coinbase, Inc. v. Suski*, 144 S.Ct. 1186, 1192 (2024). So "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id*. at 69.

To determine whether the parties have delegated arbitrability to an arbitrator, a court must look to whether the parties' agreement provides "'clear and unmistakable' evidence" that the parties intended to delegate the question to arbitrator. *Henry Schein*, 586 U.S. at 72 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Brennan*, 796 F.3d at 1130 ("[G]ateway issues [of arbitrability] can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise." (quoting *AT&T Techs., Inc.*, 475 U.S. at 649)); *First Options*, 514 U.S. at 944 ("Courts should not assume that the parties agreed to

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 7

arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." (first and second alterations in original) (citation omitted)).

Nordstrom contends that the Rewards Terms expressly delegate questions of arbitrability to the arbitrator. Dkt. # 20 at 15–17, Dkt. # 25 at 13–14. The 2018 Rewards Terms state that a "Rewards Dispute" is subject to individual arbitration and the definition of "Rewards Dispute" encompasses "disputes about the validity, enforceability or scope of this arbitration provision." Dkt. # 21-3 at 11. The 2023 Rewards Terms also expressly state that "the arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any Dispute relating to the interpretation, applicability, enforceability, or formation of this Dispute Resolution section." Dkt. # 21-7 at 13.

McGee counters that Nordstrom mistakenly relies on *Brennan*, saying "Courts will not apply the *Brennan* holding—that incorporation of the AAA rules is evidence that contracting parties agreed to arbitrate arbitrability—to instances, like here, where one party is legally unsophisticated." Dkt. # 23 at 12. McGee does not challenge the validity of the delegation provision; for example, she does not suggest that it is unconscionable.

The Ninth Circuit in *Brennan* outlined the scope of its holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130. As McGee correctly notes, the court expressly "limit[ed] [its] holding to the facts of the present case, which do involve an arbitration agreement between sophisticated parties." *Id*. at 1131 (citation and quotation marks omitted). Yet the court also acknowledged that its "holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts." *Id*. at 1030. Other courts, including courts in this District, have noted "the greater weight of authority since *Brennan* . . . concludes that *Brennan*'s holding also applies to disputes involving non-sophisticated parties[.]"

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 8

*J.A. ex rel. v. Microsoft Corp.*, C20-0640-RSM-MAT, 2021 WL 1723454, at *8 (W.D. Wash. Apr. 2, 2021) (quoting *Weimin Chen v. Sierra Trading Post, Inc.*, C18-1581-RAJ, 2019 WL 3564659, at *5–6 (W.D. Wash. Aug. 6, 2019)).

Also, when a contract delegates arbitrability to an arbitrator, "the court need not conduct further inquiries beyond the existence of the arbitration agreement." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024). In *Rent-A-Center*, the Supreme Court clarified that for such a contract, the challenging party cannot merely attack the arbitration agreement as a whole. 561 U.S. at 73–74. Rather, the party must "challenge[] the delegation provision *specifically*." *Id.* at 72 (emphasis added). This is because a delegation provision is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. And so long as the "antecedent" agreement to delegate arbitrability is valid, then a court must enforce the delegation provision as written.

Beyond solely incorporating the AAA rules, the arbitration provision in the Rewards Terms specifically delegates arbitrability issues to an arbitrator. McGee does not address the fact that the arbitration provision delegates questions about its scope and validity to an arbitrator. Because the arbitration provision validly delegates arbitrability issues to an arbitrator and because McGee does not challenge the validity of the delegation, the Court must enforce the delegation.[3]

C.   Stay of Proceedings

Nordstrom asks the Court to stay this action pending the completion of arbitration. Dkt. # 20 at 19; Dkt. # 25 at 15. The FAA directs courts to "stay the trial of the action until such

---

[3] McGee also raises issues about notice and the scope of the arbitration provision. *See generally* Dkt. # 23. But these issues must be addressed by the arbitrator in the first instance, not the Court.

arbitration has been had[.]"  9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").  Thus, the Court grants Nordstrom's request to stay the action.

## IV
### CONCLUSION

The Court GRANTS Nordstrom's motion to compel arbitration (Dkt. # 20) and STAYS this action pending arbitration.  The Court ORDERS the parties to submit a joint status report within ten days of the conclusion of arbitration.

Dated this 29th day of August, 2024.

John H. Chun
United States District Judge